**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAINBOW INTERNATIONAL LLC,                )<br>                                                              )<br>          Plaintiff,                               )<br>                                                              )<br>vs.                                                           )<br>                                                              )<br>MICHAEL D. SILVIA, individually, and    )<br>SILVIA CARPET CLEANING, INC.,          )<br>d/b/a "Rainbow International," "Rainbow  )<br>International of North Reading," "Silvia    )<br>Carpet," "Silvia Carpet Cleaning," and     )<br>"Mike Silvia's Carpet Cleaning,"            )<br>                                                              )<br>          Defendants.                            ) | Civil Action No. _____ |

## VERIFIED COMPLAINT

Plaintiff Rainbow International LLC ("Plaintiff") states the following for its Verified

Complaint against Defendants Michael D. Silvia, individually, and Silvia Carpet Cleaning, Inc.,

doing business as "Rainbow International," "Rainbow International of North Reading," "Silvia

Carpet," "Silvia Carpet Cleaning," and "Mike Silvia's Carpet Cleaning."

## NATURE OF THIS ACTION

1.      This is an action at law and in equity for service mark infringement, unfair

competition, false designation of origin, and unfair and deceptive trade practices under the

Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act"); and for breach of contract

and unfair competition under the common law.

## PARTIES

2.      Plaintiff is a limited liability company organized and existing under the laws of

the State of Texas, with its principal place of business at 1010 North University Parks Drive,

Waco, Texas 76707.

3.      Defendant Michael D. Silvia is a citizen of the Commonwealth of Massachusetts having an address of 112 B Haverhill Street, North Reading, MA 01864.

4.      Defendant Silvia Carpet Cleaning, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, which represented to the Secretary of the Commonwealth of Massachusetts that its principal place of business is 112 B Haverhill Street, North Reading, MA 01864.  Silvia Carpet Cleaning, Inc. may be served through its registered agent for service of process, Defendant Michael D. Silvia, at 112 B Haverhill Street, North Reading, MA 01864.

5.      Defendant Michael D. Silvia and Silvia Carpet Cleaning, Inc. (collectively, "Defendants") operate a carpet and upholstery cleaning and restoration services business operating under the names "Rainbow International," "Rainbow International of North Reading," "Silvia Carpet," "Silvia Carpet Cleaning," and "Mike Silvia's Carpet Cleaning."  That business operates from an address at 90, 92, or 94 Main Street, North Reading, Massachusetts 01864.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Plaintiff's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

7.      This Court has personal jurisdiction over Defendants because, on information and belief, Defendants reside in this Commonwealth, transact business within this Commonwealth, have committed tortious acts or omissions within this Commonwealth, and have otherwise established contacts within this Commonwealth sufficient to make the exercise of personal jurisdiction proper.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2)

because Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## THE RAINBOW INTERNATIONAL® SYSTEM

9.      Plaintiff is a franchisor of a nationwide system of business that provide services including, but not limited to, carpet cleaning, dyeing, repair, reinstallation and related services; upholstery, drapery, and ceiling cleaning and related services; deodorization services; and water and smoke restoration services (referred to collectively as "carpet and upholstery cleaning and restoration services").

10.      The RAINBOW INTERNATIONAL® franchise system currently consists of over 400 franchisees worldwide, each of which operates under the name and service mark RAINBOW INTERNATIONAL®.

11.      Each RAINBOW INTERNATIONAL® franchise operates pursuant to a franchise agreement under which Plaintiff imposes certain obligations and retains certain rights to help ensure the protection of its service marks and the uniform quality of the services provided by franchisees in the RAINBOW INTERNATIONAL® franchise system.

12.      Plaintiff, through its franchisees and its predecessor in interest, has used the RAINBOW INTERNATIONAL® service mark since at least as early as 1980 in connection with carpet and upholstery cleaning and restoration services.

13.      Plaintiff, through its predecessor in interest, is the owner of U.S. Registration No. 1,672,096, issued on January 14, 1992, for the mark RAINBOW INTERNATIONAL for "carpet and upholstery cleaning services" in International Class 37 (the "'096 Registration").

14.      The '096 Registration is incontestable under 15 U.S.C. § 1065 as the mark has been in continuous use in commerce for more than five years and the required affidavits of use

3

and incontestability have been filed with the U.S. Patent and Trademark Office ("USPTO").  A

true and correct copy of Certificate of Registration for the '096 Registration is attached as

**Exhibit A**.

15.     Plaintiff, through its predecessor in interest, is also the owner of U.S. Registration

No. 2,054,615, issued on April 22, 1997, for the mark "THE CLEAN EXPERIENCE"

RAINBOW INTERNATIONAL CARPET CARE & RESTORATION SPECIALIST & Design,

depicted below, for "carpet upholstery cleaning and repair services" in International Class 37 and

"carpet and upholstery dyeing, tinting and colorizing" in International Class 40 (the "'615

Registration").



16.     The '615 Registration is incontestable under 15 U.S.C. § 1065 as the mark has

been in continuous use in commerce for more than five years and the required affidavits of use

and incontestability have been filed with the USPTO.  A true and correct copy of Certificate of

Registration for the '615 Registration is attached as **Exhibit B**.

17.     Additionally, Plaintiff, through its predecessor in interest, is the owner of U.S.

Registration No. 2,768,905, issued on September 30, 2003, for a stylized depiction of the letter

"R," together with other distinctive design features as depicted below, for the following services

in International Class 37:  "carpet, upholstery and drapery cleaning and spot, stain and odor

removal services; air-duct cleaning services; disaster restoration services, namely, restoring

building interiors, carpet and furnishings damaged by fire, water, smoke and other disasters;

4

mold inhibition services; carpet repair services; [and] commercial and residential building cleaning services" (the "'905 Registration").



18.     The '905 Registration is incontestable under 15 U.S.C. § 1065 as the mark has been in continuous use in commerce for more than five years and the required affidavits of use and incontestability have been filed with the USPTO.  A true and correct copy of Certificate of Registration for the '905 Registration is attached as **Exhibit C**.

19.     Plaintiff, through its predecessor in interest, is also the owner of U.S. Registration No. 2,850,175, issued on June 8, 2004, for the mark RAINBOW INTERNATIONAL for the following services in International Class 37:  "carpet, upholstery and drapery cleaning and spot, stain and odor removal services; air-duct cleaning services; disaster restoration services, namely, restoring building interiors, carpet and furnishings damaged by fire, water, smoke and other disasters; carpet repair services; [and] commercial and residential building cleaning services"; and the following services in International Class 40:  "providing carpet and upholstery dyeing, tinting, and colorizing services; [and] mold prevention treatment of building and their contents" (the "'175 Registration").

20.     The '175 Registration is incontestable under 15 U.S.C. § 1065 as the mark has been in continuous use in commerce for more than five years and the required affidavits of use and incontestability have been filed with the USPTO.  A true and correct copy of Certificate of Registration for the '175 Registration is attached as **Exhibit D.**

21.     Plaintiff, through its predecessor in interest, is also the owner of U.S. Registration

No. 3,207,135, issued on February 13, 2007, for the mark RAINBOW INTERNATIONAL

RESTORATION & CLEANING for "carpet, upholstery and drapery cleaning, and spot, stain

and odor removal services; air-duct cleaning services; disaster restoration services, namely,

restoring building interiors, carpet and furnishings damaged by fire, water, smoke and other

disasters; carpet repair services; commercial and residential building cleaning services" in

International Class 37, and for "mold inhibition services concerning buildings and their contents"

in International Class 40 (the "'135 Registration").

22.     The '135 Registration is incontestable under 15 U.S.C. § 1065 as the mark has

been in continuous use in commerce for more than five years and the required affidavits of use

and incontestability have been filed with the USPTO.  A true and correct copy of Certificate of

Registration for the '135 Registration is attached as **Exhibit E**.

23.     Plaintiff, through its predecessor in interest, is also the owner of U.S. Registration

No. 3,346,548, issued on December 4, 2007, for the design mark depicted below, for "carpet,

upholstery and drapery cleaning and spot, stain and odor removal services; air-duct cleaning

services; disaster restoration services, namely, restoring building interiors, carpet and furnishings

damaged by fire, water, smoke and other disasters; carpet repair services; commercial and

residential building cleaning services" in International Class 37, and for "providing carpet and

upholstery dyeing, tinting and colorizing services; mold inhibition services of buildings and their

contents" in International Class 44 (the "'548 Registration").



The '548 Registration is incontestable under 15 U.S.C. § 1065 as the mark has been in continuous use in commerce for more than five years and the required affidavits of use and incontestability have been filed with the USPTO.  A true and correct copy of Certificate of Registration for the '548 Registration is attached as **Exhibit F**.  The federally-registered service marks described above, together with all of the common law counterparts of these services marks, shall be referred to collectively herein as the "RAINBOW INTERNATIONAL® Marks."

24.     Plaintiff and its franchisees have marketed and used the RAINBOW INTERNATIONAL® Marks in connection with carpet and upholstery cleaning and restoration services throughout the United States.  Plaintiff and its franchisees have invested and are investing significant time, effort, and money in advertising, marketing, and promoting the RAINBOW INTERNATIONAL® Marks and the services provided in connection with those marks.  The RAINBOW INTERNATIONAL® Marks are widely recognized for the high quality carpet and upholstery cleaning and restoration services provided by the RAINBOW INTERNATIONAL® franchise system.

25.     Because of the extensive use and promotion of the RAINBOW INTERNATIONAL® Marks in interstate commerce by Plaintiff and its franchisees, Plaintiff now owns valuable goodwill symbolized by the RAINBOW INTERNATIONAL® Marks.  The purchasing public has come to associate the RAINBOW INTERNATIONAL® Marks as identifying services created, distributed, authorized, or licensed exclusively by Plaintiff.  The RAINBOW INTERNATIONAL® Marks are distinctive and have achieved significant secondary meaning and fame.

## THE FRANCHISE AGREEMENT

26.     Plaintiff has established standard policies and procedures that govern the

7

operation of its RAINBOW INTERNATIONAL® franchises and to protect the valuable

goodwill and uniformity associated with its RAINBOW INTERNATIONAL® Marks and

distinctive business system.

27. Based on these policies and procedures, authorized RAINBOW

INTERNATIONAL® franchisees are required to conform to Plaintiff's requirements and abide

by all terms and conditions contained in the RAINBOW INTERNATIONAL® franchise

agreement.

28. Defendant Michael D. Silvia entered into a franchise agreement with Plaintiff's

predecessor in interest on December 9, 2005 (the "Franchise Agreement"). The Franchise

Agreement sets out the terms pursuant to which Mr. Silvia was authorized to operate a

RAINBOW INTERNATIONAL® franchise in the following zip codes in Essex County,

Massachusetts: 01810, 01845, 01949, 01921, 01983, and 01885; and in zip code 01864 in

Middlesex County, Massachusetts (the " Franchise Territory"). A true and correct copy of the

Franchise Agreement is attached as **Exhibit G**.

29. The initial term of the Franchise Agreement was for ten years from the date of

execution (i.e., until December 9, 2015), subject to earlier termination as provided in the

Franchise Agreement.

30. In Section 6.A of the Franchise Agreement, Mr. Silvia specifically acknowledged

Plaintiff's exclusive rights in the RAINBOW INTERNATIONAL® Marks, he agreed that he

"will hereafter assert no claim to the ownership" of those marks, and he covenanted that he "will

not contest [Plaintiff's] ownership of th[ose marks] or their validity nor will [he] do or permit

any act or thing to be done in derogation of any of the rights of [Plaintiff] in connection with

th[ose marks] either during the term of this Agreement or thereafter."

8

31.      In Section 9.C of the Franchise Agreement, Mr. Silvia agreed that, for a period of two years immediately following the termination of the Franchise Agreement, he would not, among other things, "engage in or participate in or derive any benefit from a Competitive Business . . . in the Territory without [Plaintiff's] prior written consent."  A "Competitive Business" is defined in Section 9.C as "hold[ing] interests in any business other than the Franchisee which offers or sells any product or service or component thereof which composes a part of Franchise's System or which competes directly or indirectly with the Franchise or Franchisor's System . . . ."

32.      Section 9.D of the Franchise Agreement, the liquidated damages provision, provides, in full:

> If [Plaintiff] establishes that Franchisee has violated the material terms of this Section 9 and such provisions are not enforceable by equitable relief for any reason, Franchisee agrees that [Plaintiff] will incur certain damages and costs that are not readily ascertainable.  Therefore, in such event, Franchisee shall pay to [Plaintiff], as liquidated damages and not as a penalty, a sum of money equal to 104 times the largest weekly Franchise Service Fee paid by Franchisee to [Plaintiff] during the term of this Agreement.  For purposes of this Section, if Franchisee has failed and/or refused to report Gross Sales, the parties agree that [Plaintiff] may estimate a reasonable amount of Franchise Service Fee and Franchisee shall be bound by [Plaintiff's] estimate.  Payment of such sum by Franchisee shall be due immediately upon demand by [Plaintiff] after Franchisee's violation of the terms of this Section 9 and [Plaintiff's] inability to obtain equitable relief for any reason.  [Plaintiff] and Franchisee both agree that the amount established in this Section 9.D as liquidated damages is reasonable under the circumstances existing at the time of execution of the Agreement.

33.      Section 11.B of the Franchise Agreement provides that the Mr. Silvia shall be in default under the Franchise Agreement for failure to comply with any of the requirements imposed by the agreement, which include, among other things:  failure to pay promptly any monies owing to Plaintiff when due; and failure to submit the financial or other information required by Plaintiff under the Franchise Agreement.

34.     Section 11.B further provides that Mr. Silvia, upon receipt of a written notice of default, shall have fifteen days within which to remedy any default under the Franchise Agreement and provide evidence thereof to Plaintiff.  "If any such default is not cured within the specified time, or such longer period as applicable law may require, th[e Franchise] Agreement shall terminate without further notice to Franchisee, effective immediately upon the expiration of the fifteen (15) day period or such longer period as applicable law may require."

35.     Pursuant to Section 12.A of the Franchise Agreement, immediately upon termination of the Franchise Agreement all rights granted to Mr. Silvia terminated and he was obligated to, among other things:  (a) cease to use the RAINBOW INTERNATIONAL® franchise system; (b) comply with the post-termination covenants contained in Section 9; (c) cease to use the RAINBOW INTERNATIONAL® Marks or any confusingly similar designations; (d) "bring about a complete and effective transfer of the Franchise, its customers and/or customer list and services to Franchisor or its designee"; (e) cease using all telephone numbers that are, at the time of termination, or have at any time been, listed in the Yellow Pages or white pages of the telephone directory under RAINBOW INTERNATIONAL® or any confusingly similar name; (f) upon demand of Plaintiff, direct the telephone company servicing the franchise to transfer all telephone numbers registered to Mr. Silvia in connection with the franchise to Plaintiff or its designee; (g) return to Plaintiff, at Mr. Silvia's sole expense, all materials furnished to him relating to the operation of the franchise and/or bearing the RAINBOW INTERNATIONAL® Marks; and (h) refrain from doing anything, whether specified or not, that would directly or indirectly indicate that [Mr. Silvia] was a former franchisee of [Plaintiff]."

36.     Section 13.K of the Franchise Agreement contains an "Emergency Relief" dispute

resolution provision, which states as follows:

> During the course of a Dispute, should a situation arise relating to the Marks or relating to a situation in which [Plaintiff] will suffer irreparable loss or damage unless [Plaintiff] takes immediate action, including but not limited to threatened or actual conduct in violation of Sections 9 and 12 of this Agreement, [Plaintiff] shall be free to seek declaratory relief, restraining orders, preliminary injunctive relief and/or other relief and such actions or lawsuits shall not be considered in violation of the provisions of this Section 13.

37.     Section 14.K of the Franchise Agreement provides that the agreement shall be governed by the internal laws of the state of Texas, except to the extent governed by the U.S. Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1051 *et seq.*) or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

38.     Mr. Silvia and Plaintiff further agreed in Section 14.K to "irrevocably waive trial by jury in any action, proceeding or counterclaim, whether at law or in equity."

39.     Section 14.L of the Franchise Agreement provides that if a dispute occurs or an action in law or equity arises between Plaintiff and Mr. Silvia concerning the enforcement of the Franchise Agreement, "prevailing party shall be entitled to recover reasonable attorney's fees, (including outside counsel and in-house legal fees/costs), court costs and expenses incurred by the other party in the action."

40.     In view of the importance of the telephone numbers used by Mr. Silvia in connection with his RAINBOW INTERNATIONAL® franchise, the Franchise Agreement also included a Telephone Number Assignment, found at pages 46 and 47 of the Franchise Agreement, under which Mr. Silvia agreed that with respect to telephone numbers he used "in the operation of the Franchise in the Territory," he would, among other things, "immediately discontinue use" of all such numbers upon termination of the Franchise Agreement, and "immediately execute any documents, and take any other action as may be necessary to transfer"

11

the numbers to Plaintiff upon Plaintiff's request.

## TERMINATION OF THE FRANCHISE AGREEMENT

41.     Plaintiff sent Mr. Silvia a Notice of Default on March 20, 2015, notifying him of his failure to:  (1) make payments to Plaintiff due under the Franchise Agreement totaling $7,930.30; and (2) provide Plaintiff with required royalty reports and with a Certificate of Insurance confirming that Mr. Silvia is in compliance with the insurance requirements under the Franchise Agreement and that Plaintiff is named as an additional insured.  The March 20, 2015 Notice of Default, a true and correct copy of which is attached as **Exhibit H**, provided Mr. Silvia with fifteen days within which to remedy his defaults.

42.     Mr. Silvia failed to respond at all to Plaintiff's March 20 Notice of Default.  As a result, Plaintiff terminated the Franchise Agreement effective May 5, 2015.  A true and correct copy of Plaintiff's May 4, 2015 Notice of Termination of Franchise Agreement is attached as **Exhibit I**.

43.     The Notice of Termination informed Mr. Silvia that, notwithstanding termination of the Franchise Agreement, he still had a number of post-termination obligations to fulfill under Section 12.A of the Franchise Agreement, which included the post-termination covenants contained in Section 9 of the agreement.

## DEFENDANTS' UNLAWFUL CONDUCT

44.     Despite termination of the Franchise Agreement, and without Plaintiff's authorization, Mr. Silvia and his company, Silvia Carpet Cleaning, Inc., operate at a minimum a competitive carpet cleaning and restoration business servicing Mr. Silvia's former Franchise Territory.  The Defendants provide these services under the names "Rainbow International," "Rainbow International of North Reading," "Silvia Carpet," "Silvia Carpet Cleaning," and "Mike

Silvia's Carpet Cleaning."

45.     In connection with their competitive carpet cleaning and restoration business, Defendants' utilize the identical (or substantially indistinguishable versions of) signage and vehicles of Mr. Silvia's former RAINBOW INTERNATIONAL® franchise, though they are no longer authorized to do so.

46.     For example, the exterior sign at the entrance of Defendants' Main Street location identifies the Defendants' business as "Rainbow International."  A true and correct copy of a photograph taken on August 27, 2015 depicting this sign is attached as **Exhibit J**.

47.     Also, Defendants utilize a service truck, van, and trailer all wrapped with the RAINBOW INTERNATIONAL® Marks.  True and correct copies of photographs taken on August 27, 28, and 31, 2015, depicting these vehicles are attached as **Exhibit K**.

48.     Further, Mr. Silvia, at a minimum, continues to identify his business as "Rainbow" when responding to new service inquiries.  For example, on August 28, 2015, Mr. Silvia sent a text message to an investigator engaged by Plaintiff that read, in full:  "This is mike from rainbow still doing carpet cleaning I'm in north reading still."  A true and correct screenshot of this text message is attached as **Exhibit L**.

49.     Defendants also continue to use several telephone numbers that were previously associated with Mr. Silvia's authorized RAINBOW INTERNATIONAL® franchise, including at a minimum (978) 664-3881 and (978) 664-4358.  True and correct copies of Defendants' white pages and Yellow Pages listings from current directories covering Mr. Silvia's former Franchise Territory are attached as **Exhibit M**.

50.     On September 2, 2015, Mr. Silvia and one of his employees conducted a carpet cleaning service call in North Reading, Massachusetts, which is within Mr. Silvia's former

Franchise Territory.  The van used by Mr. Silvia and his employee to conduct the service call

was wrapped with the RAINBOW INTERNATIONAL® Marks.  True and correct copies of

photographs taken during the September 2, 2015 service call are attached as **Exhibit N**.

51.     The services offered by Defendants are identical to and directly competitive to the

services offered by Plaintiff.

52.     Defendants' unauthorized use of Plaintiff's RAINBOW INTERNATIONAL®

Marks in connection with Defendants' provision of carpet cleaning and restoration services

identical to those provided by Plaintiff creates a likelihood of consumer confusion as to the

source, sponsorship, or affiliation of Defendants' business and services with Plaintiff.

53.     Mr. Silvia has breached other provisions of the Franchise Agreement in addition

to failing to cease use of the RAINBOW INTERNATIONAL® Marks, operating a business

competitive with Plaintiff, and using telephone numbers that were previously associated with Mr.

Silvia's authorized RAINBOW INTERNATIONAL® franchise.  Among other things, Mr. Silvia

has failed to pay royalties, advertising fees, and license audit fees due to Plaintiff, he has not

returned to Plaintiff materials furnished to him relating to the operation of his former RAINBOW

INTERNATIONAL® franchise, and he has not transferred to Plaintiff the telephone numbers or

customer lists associated with his former RAINBOW INTERNATIONAL® franchise.

### FIRST CLAIM FOR RELIEF
#### (Federal Service Mark Infringement as to All Defendants)

54.     The allegations of the foregoing Paragraphs are repleaded and incorporated by

reference as if fully set forth herein.

55.     Defendants' unauthorized use of the federally registered RAINBOW

INTERNATIONAL® Marks is likely to cause confusion, or to cause mistake, or to deceive

purchasers and customers as to the source, origin, or sponsorship of Defendants' carpet cleaning

and restoration services.  The consuming public is likely to believe that said services of

Defendants originate from, or are sponsored by or affiliated with, the source of services bearing

the federally registered RAINBOW INTERNATIONAL® Marks, and that Defendants operate

an authorized RAINBOW INTERNATIONAL® franchise when, in fact, they have no such

authorization.

56.     Upon information and belief, Defendants' unauthorized use of the federally

registered RAINBOW INTERNATIONAL® Marks has been intentionally undertaken with a

view and purpose of trading on and benefiting from the substantial reputation and goodwill

associated with Plaintiff and the RAINBOW INTERNATIONAL® Marks.

57.     By their unauthorized use of the RAINBOW INTERNATIONAL® Marks,

Defendants have infringed the registered RAINBOW INTERNATIONAL® Marks in violation

of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

58.     As a direct and proximate result of Defendants' unlawful conduct, as herein

alleged, Plaintiff has suffered irreparable damage and inherently unquantifiable injury and harm

to its business, reputation, and customer goodwill.  Such conduct has caused Defendants to

achieve sales and profits to which they are not entitled.

59.     Defendants' conduct has caused substantial injury to the public and to Plaintiff,

and Plaintiff is entitled to injunctive relief and to an award of Defendants' profits and to recover

Plaintiff's actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and

1117.  Any such damages or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF
**(Federal Unfair Competition and False Designation of Origin as to All Defendants)**

60.     The allegations of the foregoing Paragraphs are repleaded and incorporated by

reference as if fully set forth herein.

61.     Defendants' unauthorized use of the RAINBOW INTERNATIONAL® Marks constitutes a false designation of origin, and a false description and false representation regarding Defendants' status, or lack thereof, as an authorized franchisee of Plaintiff, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

62.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Such conduct has caused Defendants to achieve sales and profits to which they are not entitled.

63.     Defendants conduct has caused substantial injury to the public and to the Plaintiff, and Plaintiff is entitled to injunctive relief and to an award of Defendants' profits and to recover Plaintiff's actual damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.  Any such damages and profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION
### (Unfair Competition under the Common Law of Massachusetts as to All Defendants)

64.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

65.     Defendants' unauthorized use of the RAINBOW INTERNATIONAL® Marks is likely to cause confusion, or to cause mistake, or to deceive purchasers and customers as to the source, origin, or sponsorship of Defendants' carpet cleaning and restoration services.  The consuming public is likely to believe that said services of Defendants originate from, or are sponsored by or affiliated with, the source of services bearing the RAINBOW INTERNATIONAL® Marks and that Defendants operate an authorized RAINBOW INTERNATIONAL® franchise when, in fact, they have no such authorization.

66.     Upon information and belief, Defendants' unauthorized use of the RAINBOW

16

INTERNATIONAL® Marks has been intentionally, deliberately, willfully, and wantonly undertaken with a view and purpose of trading on and benefiting from the substantial reputation and goodwill associated with the RAINBOW INTERNATIONAL® Marks.

67.     Defendants' conduct alleged herein constitutes unfair competition in violation of the common law of the Commonwealth of Massachusetts.

68.     As a direct and proximate result of Defendants' unlawful conduct, as herein alleged, Plaintiff has suffered irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Such conduct has caused Defendants to achieve sales and profits to which they are not entitled.

69.     Defendants' conduct has caused substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief, Defendants' profits, and Plaintiff's actual damages, costs, and reasonable attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**(Breach of the Post-Termination Non-Compete Provision of Section 9 of the Franchise Agreement as to Defendant Mr. Silvia)**

70.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

71.     Mr. Silvia and Plaintiff's predecessor in interest entered into the Franchise Agreement.

72.     The Franchise Agreement is a written, valid, and enforceable contract, and Plaintiff has performed its obligations thereunder and seeks to protect the legitimate business interests of Plaintiff.

73.     In Section 9.C of the Franchise Agreement, Mr. Silvia agreed that, for a period of two years immediately following the termination of the Franchise Agreement, he would not,

among other things, "engage in or participate in or derive any benefit from a Competitive

Business . . . in the Territory without [Plaintiff's] prior written consent."

74.     Plaintiff lawfully terminated the Franchise Agreement effective May 4, 2015.

75.     Since the termination of the Franchise Agreement, Mr. Silvia has provided and

continues to provide carpet and upholstery cleaning services in the same geographic area in

which he was authorized to provide those same services as an authorized RAINBOW

INTERNATIONAL® franchisee.

76.     Mr. Silvia's carpet and upholstery cleaning business is a Competitive Business

under Section 9.C of the Franchise Agreement in that his business offers services that compete

directly with the RAINBOW INTERNATIONAL® franchise granted to Mr. Silvia and the

RAINBOW INTERNATIONAL® franchise system.

77.     By offering directly competitive services in the same area as his former

RAINBOW INTERNATIONAL® franchise following termination of the Franchise Agreement,

Mr. Silvia is in breach of the post-termination non-compete provision of the Franchise

Agreement.

78.     As a direct and proximate result of Mr. Silvia's unlawful conduct, Plaintiff has

suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and

harm to its business, reputation, and customer goodwill.  Such conduct will, among other things,

impair Plaintiff's authorized franchisee's ability to operate successfully a RAINBOW

INTERNATIONAL® franchise in the territory covered under the now terminated Franchise

Agreement.

79.     Mr. Silvia's conduct is causing, and is likely to cause, substantial injury to the

public and to Plaintiff, and Plaintiff is entitled to injunctive relief.  In the alternative, Plaintiff is

entitled to liquidated damages as provided for in Section 9.D of the Franchise Agreement, as a result of Mr. Silvia's breach of the post-term non-compete provision of the Franchise Agreement.

## FIFTH CLAIM FOR RELIEF
### (Breach of the Post-Termination Obligations of the Franchise Agreement, Including the Telephone Number Assignment Provision, as to Defendant Mr. Silvia)

80.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

81.     Pursuant to Section 12 of the Franchise Agreement, Defendant Mr. Silvia was required to comply with a number of post-termination obligations after the termination of the Franchise Agreement in addition to the post-termination non-compete provision contained in Section 9 of the Franchise Agreement.

82.     In Section 12 of the Franchise Agreement, Mr. Silvia agreed that, in the event his RAINBOW INTERNATIONAL® franchise terminated, he would:  (a) discontinue use of the RAINBOW INTERNATIONAL® Marks and the RAINBOW INTERNATIONAL® franchise system; (b) cease use of the telephone numbers previously associated with his authorized RAINBOW INTERNATIONAL® franchise; (c) return to Plaintiff materials furnished to Mr. Silvia relating to the operation of his former RAINBOW INTERNATIONAL® franchise; and (d) transfer to Plaintiff the telephone numbers and customer lists associated with Mr. Silvia's former RAINBOW INTERNATIONAL® franchise.

83.     Mr. Silvia also agreed, as part of the Franchise Agreement's Telephone Number Assignment, to immediately cease use of all telephone numbers used in the operation of his RAINBOW INTERNATIONAL® franchise in the Franchise Territory.

84.     Despite termination of his Franchise Agreement, Mr. Silvia:  (a) continues to use

the RAINBOW INTERNATIONAL® Marks and the RAINBOW INTERNATIONAL® franchise system; (b) continues to use telephone numbers previously associated with his authorized RAINBOW INTERNATIONAL® franchise; (c) has failed to return to Plaintiff materials furnished to him relating to the operation of his former RAINBOW INTERNATIONAL® franchise; and (d) has failed to transfer to Plaintiff the telephone numbers and customer lists associated with his former RAINBOW INTERNATIONAL® franchise.

85.     Mr. Silvia therefore is in breach of his post-termination obligations of the Franchise Agreement.

86.     As a direct and proximate result of Mr. Silvia's unlawful conduct, Plaintiff has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Such conduct will among other things impair Plaintiff's authorized franchisee's ability to operate successfully a RAINBOW INTERNATIONAL® in the territory covered under the now terminated Franchise Agreement.

87.     Mr. Silvia's unlawful conduct is causing, and is likely to cause, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Plaintiff's damages as a result of Mr. Silvia's breach of the post-termination obligations of the Franchise Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court provide relief as follows:

1.     That the Court preliminarily and permanently restrain and enjoin Defendants, and their agents, servants, employees, attorneys, and other persons in active concert or participation with them, from any and all further unauthorized use of the designation "RAINBOW" or "RAINBOW INTERNATIONAL," and any other word, term, symbol, or device confusingly

similar to the RAINBOW INTERNATIONAL® Marks, as a trademark, service mark, trade name, or other attention-getting device or triggering mechanism for the sale of Defendants' services; and from making any oral or written representations that Defendants are connected, associated, or affiliated with Plaintiff or otherwise holding themselves or their business out as being connected, associated, or affiliated in any way with Plaintiff, including without limitation answering the telephone or otherwise referring to their business as "Rainbow International," "Rainbow International of North Reading," or "formerly Rainbow International";

2.     That the Court order Defendants to turn over, remove, or destroy all advertising and promotional materials, stationery, envelopes, business cards, signage, invoices, and similar materials bearing any of the RAINBOW INTERNATIONAL® Marks, including but not limited to, removing all vehicle wraps bearing the RAINBOW INTERNATIONAL® Marks and removing the "Rainbow International" exterior sign at the entrance of Defendants' Main Street location;

3.     That the Court order Defendants to transfer without financial encumbrance to Plaintiff or its designee all telephone numbers that have ever been listed in local telephone directories in the Franchise Territory under the name "Rainbow International," or any colorable imitations thereof, or that otherwise were previously associated with Mr. Silvia's authorized RAINBOW INTERNATIONAL® franchise, including, but not limited to, (978) 664-3881 and (978) 664-4358;

4.     That an accounting be ordered and judgment rendered against Defendants for all profits received from their unauthorized use of the RAINBOW INTERNATIONAL® Marks, or from their false representations of connection, affiliation, or relationship with Plaintiff, or from their false advertising, or from their unfair competition;

21

5.     That such damages or profits to which Plaintiff is entitled be trebled pursuant to

15 U.S.C. § 1117;

6.     That the Court restrain and enjoin Defendant Mr. Silvia and any company owned

and controlled by Mr. Silvia, including, but not limited to Defendant Silvia Carpet Cleaning,

Inc., and their principals, agents, servants, employees, attorneys, and other persons in active

concert or participation with them, from engaging in, participating in, or deriving any benefit

from a "Competitive Business" (as defined in the Franchise Agreement) in the Franchise

Territory until two years have passed, deemed to commence on the date of entry of the Order of

this Court granting the requested injunction;

7.     That the Court order Mr. Silvia to transfer his customer lists to Plaintiff;

8.     That the Court order Mr. Silvia to return to Plaintiff all materials furnished by

Plaintiff or related to the operation of his former RAINBOW INTERNATIONAL® franchise;

9.     That Plaintiff have and recover from Defendant Mr. Silvia monetary damages

consistent with applicable state law including, without limitation, compensation for Plaintiff's

damages arising from Mr. Silvia's breach of the post-termination obligations of Section 12 of the

Franchise Agreement, and Plaintiff's damages and/or Defendants' profits from Defendants'

unfair competition, in an amount to be determined at trial;

10.     In the event the Court does not grant the injunctive relief sought in Paragraph 6 of

the Prayer for Relief, that the Court order Defendant Mr. Silvia to pay to Plaintiff, as liquidated

damages and not as a penalty, a sum of money equal to 104 times the largest weekly "Franchise

Service Fee" (as defined in the Franchise Agreement) paid by Mr. Silvia to Plaintiff during the

term of the Franchise Agreement, as provided in Section 9 of the Franchise Agreement;

11.     That the costs of this action, including reasonable attorneys' fees for Plaintiff's

attorneys, be taxed against Defendants;

12.     That Plaintiff be awarded pre- and post-judgment interest; and

13.     That the Court grant Plaintiff such other and further relief, both general and

specific, as the Court may deem just and proper.

This 26th day of October, 2015.

Respectfully submitted,

/s/ Eric H. Karp
Eric H. Karp (Mass. Bar No. 260280)
Ari N. Stern (Mass. Bar No. 672442)
**WITMER KARP WARNER &
RYAN, LLP**
22 Batterymarch Street
Boston, MA 02109
Phone:  (617) 423-7250
ekarp@wkwrlaw.com
astern@wkwrlaw.com

William M. Bryner (application for
admission pro hac vice to be filed)
**KILPATRICK TOWNSEND &
STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC  27101-2400
Phone:  (336) 607-7482
BBryner@KilpatrickTownsend.com

James W. Faris Jr. (application for
admission pro hac vice to be filed)
**KILPATRICK TOWNSEND &
STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
Phone: (404) 815-6500
JFaris@kilpatricktownsend.com

***Attorneys for Rainbow International LLC***